UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STANLEY J. BRYANT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-1840 |
| | § | |
| THE CIT GROUP/CONSUMER FINANCE, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to remand filed by plaintiff Stanley J. Bryant. Dkt. 16. After considering the motion, response, reply, supplemental authority, and the applicable law, the court is of the opinion that the motion to remand should be DENIED.

**I. BACKGROUND**

This case relates to the foreclosure sale of property located at 2234 Dawn Shadow Way, Fresno, Texas 77545 (the "Property"). Dkt. 20 (first amended complaint). Bryant filed suit against the defendants[1] in the 434th Judicial District Court in Fort Bend County, Texas, on May 17, 2016. Dkt. 1-5 (original petition). He asserts that he executed a mortgage note on the Property secured by a deed of trust (the "Loan") with the CIT Group/Consumer Finance, Inc. ("CIT") on December 20, 2005. Dkt. 20. However, he fell into default in 2011 after experiencing medical problems. *Id.* He alleges that he received several notices of sale and that the Property sold on April 5, 2016. *Id.* The

---

[1] The defendants are the CIT Group/Consumer Finance, Inc.; the Bank of New York Mellon as Trustee for the CWABS, Inc. Asset-Backed Certificates, Series 2006-BC4; the CWABS, Inc. Asset-Backed Certificates, Series 2006-BC4; Countrywide Home Loans, Inc.; K.N.A. Bank of America, N.A.; CWABS, Inc.; Ditech Financial LLC; and Mortgage Electronic Registration Systems, Inc. a/k/a MERS.

purchaser was defendant Bank of New York Mellon as Trustee for the CWABS, Inc. Asset-Backed Certificates, Series 2006-BC4 (the "Bank of NY").  *Id.*  Bryant contends that the Bank of NY threatened to sue Bryant for eviction if he did not vacate the Property.  *Id.*

According to Bryant's state-court petition and amended complaint, the only recorded assignment of the Loan is a fraud and forgery and even if it were not there is no complete and unbroken chain of assignments from CIT to the Bank of NY.  Dkts. 1-5, 20.  Bryant argues that Chester Levings, an Assistant Secretary of the Mortgage Electronic Registration Systems, Inc. ("MERS"), "purportedly signed" an assignment of the Loan to the Bank of NY on August 23, 2011, but the assignment does not state that MERS was acting as nominee for any other entity.  Dkt. 20.  Bryant asserts that this and other documents related to the chain of assignments are void *ab initio* because they are forgeries.  *Id.*  He also asserts that if the Loan was securitized into the 2006-BC4 Trust as the Bank of NY claims, it was not properly and validly transferred according to the Trust's Pooling and Servicing Agreement ("PSA") and the law of the state in which the Trust was created (New York).  *Id.*  He contends the note was not legally or validly assigned and/or transferred as required by Texas and New York law for standing to foreclose as a real party in interest.  *Id.*  His claims include (1) violation of § 12.002 of the Texas Civil Practices and Remedies Code against K.N.A. Bank of America, N.A. ("BOA"), MERS, and the Bank of NY; (2) negligence per se against BOA, MERS, and the Bank of NY; (3) gross negligence and gross negligence per se against BOA, MERS, and Bank of NY; (4) money had and received against the Bank of NY, BOA, and Ditech Financial LLC ("Ditech"); (5) unjust enrichment against the Bank of NY, BOA, and Ditech; (6) declaratory judgment of lack of standing to foreclose against the Bank of NY and Ditech; (7) declaratory judgment against all defendants; (8) quiet title against all defendants; (9) declaratory relief under the statute of limitations against all defendants; (10) fraud against the CWABS, Inc.

Asset-Backed Certificates, Series 2006-BC4 Trust (the "CWABS Trust"), Bank of NY, and Ditech; and (11) violation of the Texas Debt Collection Act against Bank of NY, BOA, and Ditech. *Id.*

Ditech and the Bank of NY removed the case to this court on June 27, 2016, alleging diversity jurisdiction. Dkt. 1. They noted that defendants BOA and MERS consented to the removal, and they asserted that no consent was required from the CWABS Trust or CIT because they are nominal parties that had been fraudulently joined. *Id.* They additionally noted that the consent of the CWABS Trust, CIT, and CWABS, Inc., was not required because these parties have not been served and no citations have been issued to them. *Id.*

Bryant filed a motion to remand on September 23, 2016. Dkt. 16. He alleges that the notice of removal fails to state the citizenship of all the defendants and should thus be remanded. *Id.* Specifically, he asserts that the CWABS Trust must prove that the citizenship of each of its members and beneficiaries is diverse from Bryant's citizenship under the U.S. Supreme Court's March 2016 *Americold* decision. *Id.* (citing *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016)). Bryant argues that, in accordance with *Americold* and this court's decision in *Juarez v. DHI Mortgage Co., LTD*, NO. H-15-3534, 2016 WL 3906296 (S.D. Tex. Jul. 19, 2016) (Miller, J.), the defendants must demonstrate that the CWABS Trust is a traditional donative trust and not an unincorporated artificial business entity in order for the court to look only at the citizenship of the trustee when considering the citizenship of the trust. *Id.*

Ditech and the Bank of NY contend that the trustee's (Bank of NY) citizenship, not the citizenship of the CWABS Trust, is what counts for diversity purposes. Dkt. 21. Ditech and the Bank of NY further contend that even if the court were to consider the citizenship of the CWABS Trust, it would find that the CWABS Trust is a traditional trust and the citizenship of its members is irrelevant for diversity purposes. *Id.* Ditech and the Bank of NY also assert that the CWABS

3

Trust is a nominal party improperly joined. *Id.* Ditech and the Bank of NY argue that the controlling issue here is whether the real and substantial party to this controversy is the Bank of NY or the CWABS Trust; Ditech and the Bank of NY argue it is the Bank of NY. *Id.*

In reply, Bryant asserts that "[i]t cannot be clearer that Plaintiff intended to sue the trust itself," pointing out that he named the trust in his original petition and alleged that the CWABS Trust did not have the right to foreclose on the Property. Dkt. 23. With regard to the argument that the trust is improperly joined, Bryant notes that Fifth Circuit law states that a court may not consider a claim of improper joinder if the defendants fail to allege a non-diverse defendant. *Id.* (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)).

## II. LEGAL STANDARD

A party may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441 (2012). The party seeking removal bears the burden of establishing federal jurisdiction. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). This statutory right to removal is strictly construed because "removal jurisdiction raises significant federalism concerns." *Id.* (citations omitted). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Ditech and Bank of NY claim that the court has removal jurisdiction based on diversity of citizenship. Dkt. 1 at 4–5. Subject matter jurisdiction premised on diversity requires (1) complete diversity of citizenship between the parties and (2) an amount in controversy in excess of $75,000. 28 U.S.C. § 1332 (2012). The only disputed issue is whether the diversity requirement is satisfied.

Courts have taken a two-step approach to determining the citizenship of a trust for purposes of diversity: (1) identify whether the trust or the trustee is the real and substantial party to the

4

controversy, and (2) if the trust is the real party, then determine whether it is a "traditional trust" where a court looks to the citizenship of the trustee, or whether it is a "business trust" (unincorporated association) where a court looks to the citizenship of the trust's members to determine jurisdiction. *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016).

At the outset, the court must determine who is the real and substantial party to the controversy that is being haled to court—the trust or the trustee. "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). The two main U.S. Supreme Court cases addressing the citizenship of a trust, *Americold* and *Navarro*, do not "limit[] an entity's membership to its trustees just because the entity happens to call itself a trust." *Id.*; *see also, e.g.*, *Wells Fargo Bank, N.A. v. Transcon. Realty Inv'rs, Inc.*, No. 3:14-CV-3565-BN, 2016 WL 3570648, at *2 (N.D. Tex. July 1, 2016); *Juarez v. DHI Mortg., Ltd.*, No. CV H-15-3534, 2016 WL 3906296, at *2 (S.D. Tex. July 19, 2016) (Miller, J.).

If the trustee is suing or is being sued in his or her own name, or if the trust is a traditional trust, then the *Navarro* standard applies. *Navarro Savs. Ass'n v. Lee*, 446 U.S. 458, 100 S. Ct. 1779 (1980). Trustees that have exclusive authority over the property (i.e. the declaration of the trust "authorizes the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees") may "sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.* at 464–66. In these instances, the court will look to the citizenship of the trustee alone to determine jurisdiction.

If the trust is an unincorporated artificial business entity like the trust considered in *Americold*, the "shareholders appear to be in the same position as the shareholders of a joint-stock

5

company or the partners of a limited partnership." *Americold*, 136 S. Ct. at 1016. In those cases, the court looks to the citizenship of all of the trust's members. *Id.*

### III. ANALYSIS

The court looks to the powers bestowed upon the trustee to determine whether the trust or the trustee is the real party in interest. *Navarro* will apply and the court will look to the trustee's citizenship rather than the citizenship of the trust if the Bank of NY shows that the declaration of the trust "authorizes the trustees to [, for example,] take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." *Navarro*, 446 U.S. 462–66. The Bank of NY points to the following provisions from the PSA to support its claim that the trustee is the real party to the controversy:

> Each Seller hereby sells, transfers, assigns, sets over and otherwise conveys to the Depositor . . . all the right, title and interest of such Seller in and to the applicable Initial Mortgage Loans . . . . Immediately upon the conveyance of the Initial Mortgage Loans . . . the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all right title and interest in the Initial Mortgage Loans.

Dkt. 21, Ex. A § 2.01(a).

> [E]ach Seller sells, transfers, assigns, sets over and otherwise conveys to the Depositor . . . all right, title and interest of such Seller in and to the related Subsequent Mortgage Loans . . . . Immediately upon the conveyance of the Subsequent Mortgage Loans . . . the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all right title and interest in the Subsequent Mortgage Loans.

*Id.* § 2.01(b).

> The Depositor . . . hereby sells, transfers, assigns and otherwise conveys to the Trustee for the use and benefit of the Certificateholders, without recourse, all right title and interest in the portion of the Trust Fund not otherwise conveyed to the Trustee pursuant to Section 2.01(a) or (b).

*Id.* § 2.01(c).

> In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered to, and deposited with, the Trustee . . . for the benefit of the Certificateholders, the following documents or instruments with respect to each such Mortgage Loan so assigned . . . : the original Mortgage Note . . ., the original recorded Mortgage . . ., a duly executed assignment . . . , [and other documents].

*Id.* § 2.01(g)(I)-(iii).

> The Trustee acknowledges receipt, subject to the limitations contained in and any exceptions noted in the Initial Certification in the form annexed hereto as Exhibit G-1 and in the list of exceptions attached thereto, of the documents referred to in clauses (I) and (iii) of Section 2.01(g) above with respect to the Initial Mortgage Loans and all other assets included in the Trust Fund and declares that it holds and will hold such documents and the other documents delivered to it constituting the Mortgage Files, and that it holds or will hold such other asserts included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders.

*Id.* § 2.02(a).

> The Trustee acknowledges the transfer and assignment to it of the Trust Fund and, concurrently with such transfer and assignment, has executed, authenticated and delivered, to or upon the order of the Depositor, the Certificates in authorized denominations evidencing the entire ownership of the Trust Fund. The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates and to perform the duties set forth in this Agreement.

*Id.* § 2.06.

> No Certificateholder shall have any right to vote (except as provided herein) or in any manner otherwise control the operation and management of the Trust Fund, or the obligations of the parties hereto, nor shall anything herein set forth or contained in the terms of the Certificates be construed so as to constitute the Certificateholders

> from time to time as partners or members of an association; nor shall any Certificateholder be under any liability to any third party by reason of any action taken by the parties to this Agreement pursuant to any provision hereof.
>
> No Certificateholder shall have any right by virtue or by availing itself of any provisions of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement unless such Holder previously shall have given to the Trustee a written notice of an Event of Default and of the continuance thereof, as hereinbefore provided, the Holders of Certificates evidencing not less than 25% of the Voting Rights shall also have made written request to the Trustee to Institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby, and the Trustee, for 60 days after its receipt of such notice, request and offer of indemnity shall have neglected or refused to institute any such action, suit or proceeding . . . .

*Id.* § 10.08.

Recently, the Fifth Circuit considered whether to look to the trustee's or trust's citizenship when determining whether diversity of citizenship existed in a case in which the trust's Pooling and Servicing Agreement bestowed, similar to the instant case, "'all the right, title and interest of the Depositor in and to the Trust Fund'" upon the trustee. *Justice v. Wells Fargo Bank Nat'l Ass'n*, No. 15-20615 (Mar. 22, 2017), slip op. (Dkt. 38, Ex. A) (unpublished opinion).[2] The Fifth Circuit noted

---

[2] Bryant points out that *Justice* is not published and urges the court to instead rely on six district court cases, which he contends are "more persuasive than one unpublished opinion from a three-judge panel of the Fifth Circuit." Dkt. 40. The court finds both the Fifth Circuit's opinion and the opinions of its sister courts persuasive and notes that there is no apparent disagreement with the notion that, if the defendants meet the burden of showing that the trustee is the real party in interest, the court looks to the citizenship of the trustee. *See Pitts v. The Bank of New York Mellon as Trustee for the CWABS Asset-Backed Certificates Trust 2004–12*, No. 16-cv-01410, Dkt. 37 (Feb. 14, 2017) (finding the defendants did not meet their burden of showing who exerted control and how the trust operated); *Smith v. The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificate Holders of the CWABS, Inc. Asset-Backed Certificates, Series 2007–4*, No. 16-1669, Dkt. 43 (S.D. Tex. Jan. 18, 2017) (slip op.) (finding that "because Defendants merely recited the *Navarro* standard and failed to provide any evidence of such 'customary powers,'" that the "Defendants did not meet their burden for removal"); *Guillen v. Countrywide Home Loans, Inc.*, No. H-15-849, 2016 WL 7103908, at *4 (S.D. Tex. Dec. 6, 2016) (identifying the first step as

that the trust's beneficiaries did not have power to "'control the operation and management of the Trust Fund.'" *Id.* It focused on whether the trustee's "'control over the assets held in [its] name[]'" was "real and substantial" and noted that whether "'the trust [otherwise] may depart from conventional forms in others respects has no bearing'" on the real-and-substantial-control question. *Id.* (quoting *C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 191, 110 S. Ct. 1015 (1990)). The Fifth Circuit held that the trustee had real and substantial control under the PSA and therefore looked to the citizenship of the trustee, not the trust beneficiaries, when determining whether diversity jurisdiction existed. *Id.*

The PSA provisions in the *Justice* case and this case are similar. It is clear from the provisions of the PSA cited by the Bank of NY in this case that the Bank of NY has legal title of the trust assets. Bryant argues that, regardless of the similarities, the PSA here is different because in the instant PSA the master servicer, not the trustee, holds "full power and authority" to make decisions regarding the mortgage loans that make up the assets of the trust, and this power is "for and on behalf of the Certificateholders." Dkt. 40. Bryant thus contends that "while the CWABS Trust's PSA gives *nominal* title to the Trustee, it is the Certificateholders, through their agent the Master Servicer, [who] have all of the actual control of and make all of the decisions pertaining to the CWABS Trust's assets." *Id.* Bryant also suggests that the Certificateholders in this case have "numerous other non-traditional powers over the Trustee," such as the right to force the master

---

determining "whether the trust or the trustee is the real and substantial party to the controversy"); *Swoboda v. Ocwen Loan Servicing, LLC*, No. 13-cv-2986, Dkt. 138 (S.D. Tex. Sept. 19, 2016) (slip op.) (noting that the "record here does not show that the [trust at issue] is a corporate entity, and the parties [made] no attempt to classify it as a 'traditional trust'"); *Juarez v. DHI Mortg. Co., Ltd.*, No. 15-cv-3534, 2016 WL 3906296, at *2 (S.D. Tex. July 19, 2016) (finding that the "record indicates that the 2004-68 Trust is a real and substantial party to the controversy" and noting that the defendants did not even attempt to classify the trust).

9

servicer to file suit on their behalf, to terminate the master servicer, to terminate the trustee, and to direct the actions of the trustee.[3] *Id.*

The PSA does give the certificateholders and the master servicer certain powers over the trustee. For instance, "the NIM Insurer or the Holders of each Class of Certificates evidencing not less than 25% of the Voting Rights of such Class" may request in writing for the Trustee to make an investigation "prior to the occurrence of an Event of Default and after the curing of all Events of Default that may have occurred." Dkt. 16-4 § 8.02(4). The Trustee, however, is not obligated to

> exercise any of the trusts or powers vested in it by [the] Agreement or to make any investigation of matters arising [under the Agreement] or to institute, conduct or defend any litigation [under the Agreement] or in relation [to the Agreement] at the request, order or direction of the NIM Insurer or any of the Certificateholders, pursuant to the provisions of [the] Agreement, unless the NIM Insurer or such Certificateholders, as applicable, shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities that may be incurred therein or thereby.

*Id.* § 8.03(9).

Under section 8.07 of the PSA, the certificateholders may, in certain circumstance, remove the trustee. Dkt. 16-4 § 8.07 (The "Holders evidencing at least 51% of the Voting Rights of each Class of Certificates may at any time remove the Trustee and appoint a successor trustee by written instrument or instruments, in triplicate, signed by such Holders or their attorneys-in-fact duly authorized . . . ."). However, having power to remove a trustee "falls short of the authority to direct the Trustee's actions." *May v. New Century Mortg. Corp.*, No. H-16-1272, Dkt. 46, at 12 (S.D. Tex. Sept. 19, 2016) (slip op.) (Lake, J.) (noting that the power to remove a trustee "is not insignificant"

---

[3] Bryant did not provide the court with the portion of the PSA that he claims allows the Certificateholders through the Master Servicer to direct the actions of the Trustee. *See* Dkt. 16 at 10 (citing § 8.01(3)); Dkt. 16-4 at 3–4 (skipping from section 7.01 to section 8.01(4)).

but finding more significant that "[w]hatever business is conducted on behalf of the Trust is conducted by or on the authority of the Trustee").

The Agreement also gives the certificateholders, in certain situations, some power regarding directing the trustee to file suit. Specifically,

> In an Event of Default or other material default by the Master Servicer or the Depositor under [the] Agreement occurs and is continuing, at the direction of the Certificateholders holding not less than 51% of the Voting Rights or the NIM Insurer, the Trustee shall proceed to protect and enforce its rights and the rights of the Certificateholders or the NIM Insurer under [the] Agreement by a suit, action, or proceeding in equity or at law or otherwise, whether for the specific purpose of any covenant or agreement contained in [the] Agreement or in aid of the execution of any power granted in [the] Agreement or for the enforcement of any other legal, equitable, or other remedy, as the Trustee, being advised by counsel, and subject to the foregoing, shall deem most effectual to protect and enforce any of the rights of the Trustee, the NIM insurer and the Certificateholders.

*Id.* § 8.14.

Additionally, under section 10.01 the certificateholders have some input into amendments to the Agreement in certain situations, as argued by Bryant, but there are many situations in which the trustee may amend the PSA without the certificateholders' consent. *See id.* § 10.01.

On balance, even construing this Agreement in the light most favorable to remand (as the court must), the court finds that the trustee's powers are more akin to the trustee's powers discussed in *Navarro* and *Justice* than those discussed in *Americold*. The trustee—not the trust—is the real party in interest whose citizenship counts for diversity purposes.

Here, it is undisputed that the trustee's citizenship is New York. The citizenship of the other defendants, other than the trust, are Delaware, Minnesota, Maryland, Florida, Virginia, North

Carolina, and California. Dkt. 1. Bryant is a citizen of Texas. *Id.* Complete diversity therefore exists.

## IV. Conclusion

Because complete diversity exists, Bryant's motion to remand is DENIED.

Signed at Houston, Texas on April 12, 2017.

_____
Gray H. Miller
United States District Judge