UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STANLEY J. BRYANT, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-1840 |
| | § | |
| THE CIT GROUP/CONSUMER FINANCE, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## AMENDED[1] MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss filed by defendants Ditech Financial, LLC ("Ditech") and The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the benefit of the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2006-BC4 ("BONYM") (collectively, "Defendants").[2]  Dkt. 22.  After considering the motion, response, and applicable law, the court is of the opinion that Defendants' motion to dismiss should be GRANTED.

## I. BACKGROUND

This case relates to the foreclosure sale of real property located at 2234 Dawn Shadow Way, Fresno, Texas 77545 (the "Property").  Dkt. 20 (first am. compl.).  Plaintiff Stanley J. Bryant executed a mortgage note on the Property secured by a deed of trust on December 20, 2005 (collectively, the "Loan").  Dkt. 20, Ex. 1.  CIT Group/Consumer Finance, Inc. ("CIT") was the

---

[1] The court *sua sponte* amends its original memorandum opinion and order to correct its analysis in section III.D.  This is the only section that is amended, and the amendment does not impact the outcome.

[2] Defendants The CIT Group/Consumer Finance, Inc. and CWABS, Inc. have not been served.  Dkt. 1.  Defendants Countrywide Home Loans, Inc., now know as Bank of America NA, and Mortgage Electronic Registration Systems, Inc. have appeared but did not join in the motion to dismiss.  *See* Dkts. 1-4, 22.

lender, and the Mortgage Electronic Registration System ("MERS") was listed as the beneficiary of the deed of trust. *Id.* MERS assigned the deed of trust to BONYM on August 23, 2011. Dkt. 20, Ex. 10. Bryant claims that at some point in 2011 he had medical problems and struggled to pay his mortgage and medical bills, which resulted in his falling into default on his home loan. Dkt. 20. He attaches six different notices of sale to his complaint, the earliest of which is dated November 2011 and the most recent of which is dated April 2016. *Id.* & Exs. 2–7. Defendant Bank of America, N.A. ("BOA") is listed as the acting mortgage servicer on some of the notices, which were served by a substitute trustee or trustees. *See, e.g.*, Dkt. 20, Ex. 2. The final attached notice of sale lists the sale date as April 5, 2016. Dkt. 20, Ex. 7. On April 5, 2016, the house was sold to BONYM via a credit bid. Dkt. 20, Ex. 8. Bryant contends, however, that he holds legal title to the house. *Id.*

According to Bryant's amended complaint, the only recorded assignment of the Loan is a fraud and forgery and, even if it were not, there is no complete and unbroken chain of assignments from CIT to BONYM. Dkt. 20. Bryant argues that Chester Levings, an Assistant Secretary of MERS, "purportedly signed" an assignment of the Loan to BONYM on August 23, 2011, but the assignment does not state that MERS was acting as nominee for any entity. Dkt. 20. Bryant asserts that this and other documents related to the chain of assignments are void *ab initio* because they are forgeries. *Id.* He also asserts that if the loan was securitized into the 2006-BC4 Trust as BONYM claims, it was not properly and validly transferred according to the Trust's Pooling and Servicing Agreement ("PSA") and the law of the state in which the Trust was created—New York. *Id.* He contends the note was not legally or validly assigned and/or transferred as required by Texas and New York law and that BONYM thus had no standing to foreclose as a real party in interest. *Id.* Bryant raises eleven causes of action: (1) violation of section 12.002 of the Texas Civil Practices and Remedies Code against BOA, MERS, and BONYM; (2) negligence per se against BOA, MERS, and

BONYM; (3) gross negligence and gross negligence per se against BOA, MERS, and BONYM; (4) money had and received against BONYM, BOA, and Ditech Financial LLC ("Ditech"); (5) unjust enrichment against BONYM, BOA, and Ditech; (6) declaratory judgment of lack of standing to foreclose against BONYM and Ditech; (7) declaratory judgment against all defendants; (8) quiet title against all defendants; (9) declaratory relief under the statute of limitations against all defendants; (10) fraud against the CWABS, Inc. Asset-Backed Certificates, Series 2006-BC4 Trust (the "CWABS Trust"), BONYM, and Ditech; and (11) violation of the Texas Debt Collection Act ("TDCA") against BONYM, BOA, and Ditech. *Id.*

Ditech and BONYM removed the case to this court on June 27, 2016, alleging diversity jurisdiction. Dkt. 1. They noted that defendants BOA and MERS consented to the removal, and they asserted that no consent was required from the CWABS Trust or CIT because they are nominal parties that had been fraudulently joined. *Id.* They additionally contended that the consent of the CWABS Trust, CIT, and CWABS, Inc., was not required because these parties have not been served and no citations have been issued to them. *Id.* Bryant filed a motion to remand, arguing that the case should be remanded because the notice of removal failed to state the citizenship of the CWABS Trust. Dkt. 16. Ditech and BONYM argued that the trustee's citizenship, not the trust's, is what matters in this case. Dkt. 21. The court held that the trustee was the real party in interest whose citizenship counted for diversity purposes and denied the motion to remand. Dkt. 43.

Defendants filed a motion to dismiss. Dkt. 22. They argue that (1) Bryant lacks standing to assert any violations of the PSA and challenge any assignment that purportedly violates the PSA; (2) Bryant's conclusory forgery allegations do not meet the pleading standards, which require allegations as to who, what, when, where, and how of the alleged fraud; (3) the Fifth Circuit and Texas court have repeatedly held that MERS has the authority to assign deeds as a beneficiary,

foreclosing Bryant's argument that MERS did not have the authority to execute the assignments; (4) Bryant's quiet title claim fails because it is based on inadequate allegations of forgery rather than the strength of Bryant's title; (5) Bryant's statutory fraudulent lien claims relating to the filings of the assignment and substitute trustees in the real property records of Fort Bend County are time-barred; (6) even if the statutory fraudulent lien claims were not time-barred, a document assigning a deed of trust does not qualify as a "lien or claim" under the statute; (7) moreover, Bryant's statutory fraudulent lien claims fail because Bryant did not adequately plead that the defendants intended to cause physical or financial injury or mental anguish; (8) the negligence-based claims are time-barred; (9) the negligence-based claims also fail because there is no private right of action under the relevant statute and, regardless, the defendants did not violate the statute because the statute does not require recording of an assignment of a deed of trust; (9) the unjust enrichment and money had and received claims fail because there is a valid contract covering the subject matter of this dispute; (10) the fraud claims fail under the economic loss rule and were not pled with particularity; and (11) the TDCA claim fails because it is based on the deficient lack of standing to foreclose and forgery allegations and also because it is conclusory, lacks specific facts, and is insufficient to plead plausible harm. Dkt. 22. Defendants argue that because all of these claims fail, Bryant's requests for declaratory relief also necessarily fail. *Id.*

In response, Bryant contends that he has alleged sufficient facts for all claims that require a heightened pleading standard, that all of his claims are properly pled, and that the statute-of-limitations defense is a red herring. Dkt. 29.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127

4

S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings, and attachments thereto, in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

In addition to meeting the plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)). However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements

were made, and explain why the statements were fraudulent." *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).  Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  However, "Rule 9(b)'s ultimate meaning is context-specific." *Grubbs*, 565 F.3d at 185.  Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id.*

### III. ANALYSIS

Bryant has asserted eleven causes of action plus a request for exemplary damages and attorneys' fees.  Dkt. 20.  The court will first address two overarching themes in Bryant's amended complaint—that the Loan was not properly transferred according to the PSA and that various signatures are forgeries.  It will then discuss each claim in the order Bryant asserts them in his complaint and determine whether Bryant has stated any claims for which relief can be granted.

### A. Securitization Challenges

Bryant contends that the Loan was not properly and validly transferred into the 2006-BC4 Trust according to the Trust's PSA.  *Id.*  Defendants argue that Bryant does not have standing to assert violations of the PSA or challenge the assignment for purportedly violating the PSA because Bryant is not a party to the PSA.  Dkt. 22.  In his response, Bryant makes various arguments relating to standing, but he does not address Defendants' contention that Bryant does not have standing to challenge violations of the PSA.  *See* Dkt. 29.  Under Fifth Circuit law, Bryant has no right to challenge the assignments as being in violation of the PSA unless he is a party to the PSA or an intended third-party beneficiary of the PSA.  *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d

220, 228 (5th Cir. 2013) (applying Texas law). Since Bryant did not plead any facts indicating that he is an intended third-party beneficiary of the PSA, his claims relating to violations of the PSA cannot stand. *See id.* (noting that the plaintiffs had failed to "state any facts indicating that the parties to the PSA *intended* that" the plaintiffs be third-party beneficiaries and that, regardless, "the fact that the assignments violated the PSA—a separate contract—would not render the assignment void, buy merely entitle [the plaintiffs] to sue for breach of the PSA"). Thus, any claims based on the invalidity of the assignments due to violations of the PSA fail.

## B.    Forgery Allegations

Bryant also contends that he "is informed and believes, and thereon alleges, and alleges upon information reasonably likely to be discovered, that Chester Levings did not personally sign the Assignment, nor did a person with authority from the real Chester Levings sign the Assignment . . . or affix Chester Levings's electronic signature to the Assignment, . . . [which causes] the Assignment to be void *ab initio* as a forgery." Dkt. 20 (italics corrected). According to the amended complaint, Bryant based this belief on "out-of-state mortgage assignments in which the signature for Chester Levings is markedly different from the signature on the Assignment in this case." *Id.* He attached assignments of properties located in Florida and South Carolina that were purportedly signed by Levings, and in each of these assignments, Levings' signature is an illegible right-slanted signature. *See* Dkt. 20, Exs. 11–14. The signature in this case is also an illegible right-slanted signature. *See* Dkt. 20, Ex. 10. The signatures on these assignments are similar but not identical. *Compare*, Dkt. 20, Exs. 10–14.

Bryant similarly contends in his complaint that he "is informed and believes, and thereon alleges, or alleges upon information reasonably likely to be discovered, for each of the recorded substitution documents referenced [in the amended complaint], the signatures of each signer [of the

substitution of trustee filings] were not signed or affixed by the named signer, nor were the signatures signed or affixed with someone else with the knowledge or authority of the named signers with regard to the Plaintiff's specific loan. Thus, all substitution documents are forgeries and void *ab initio*." Dkt. 20. Bryant attached the following to his complaint: an appointment of substitute trustee purportedly signed by Melanie D. Cowan, Vice President of BONYM, relating to the Property, and three appointment of substitute trustee forms or assignments of other properties that are purportedly signed by Cowan. *See* Dkt. 20, Exs. 16, 18–20. The signatures, like the Levings's signatures, are similar but not identical. Bryant contends the Cowan signatures are "markedly different." Dkt. 20. Bryant also attaches two additional appointment of substitute trustee forms appointing substitute trustees for the Property, one purportedly signed by Tanyia Hill, assistant vice president of BONYM, and one purportedly signed by Brandon Schildts, a BONYM foreclosure supervisor. Dkt. 20, Exs. 15, 17.

Defendants assert that Bryant must plead the who, what, where, when, and how of the alleged forgeries and that his conclusory assertions of forgery do not meet this heightened pleading standard. Dkt. 22. The court agrees that Federal Rule of Civil Procedure 9(b) provides the appropriate pleading standard for Bryant's forgery allegations. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Lopez v. Sovereign Bank*, *N.A.*, No. H-13-1429, 2014 WL 7446746, at *8 (S.D. Tex. Dec. 31, 2014) (Rosenthal, J.) (explaining that Rule 9(b) applies to claims in which fraud is alleged, even if fraud is not an element of that claim, and applying Rule 9(b) to similar forgery allegations).

Bryant argues, however, that his forgery allegations are based on information that is peculiarly within the opposing party's knowledge and that, as such, he should be permitted to discovery information about the alleged forgery. Dkt. 29. He also asserts that pleading fraud with

particularity does not necessarily mean pleading the date, time, or place of the fraud if the party has "alternative means of injecting precision and some measure of substantiation into its allegations of fraud." *Id.* Bryant contends that allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth a factual basis for the plaintiff's belief. *Id.*

The court agrees that the requirements of Rule 9(b) may be relaxed where the facts relating to the alleged fraud are peculiarly within the opposing party's knowledge; however, this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)); *see also id.* ("[E]ven where allegations are based on information and belief, the complaint must set forth a factual basis for such belief."). Bryant has provided only conclusory statements that the signature on the assignment was forged. *See* Dkt. 20; *see also Reed v. Bank of Am, N.A.*, No. h-15-2005, 2016 WL 3058303, at *3 (S.D. Tex. May 3, 2016) (Miller, J.) (dismissing almost identical forgery allegations). While he attaches documents that he claims have "markedly different signatures," Bryant has provided no information regarding who executed these alleged forgeries, how the forgery scheme was carried out, or why the alleged forged signatures were made. *See Tuchman*, 14 F.3d at 1068 ("Rule 9(b) requires the plaintiff to allege the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992))). Courts have found allegations similar to Bryant's insufficient in many cases. *See, e.g.*, *Jemison v. Citimortgage, Inc.*, No. H-13-2475, 2015 WL 251754, at *2 (S.D. Tex. Jan. 20, 2015) (Rosenthal, J.) (finding bare allegations that signatures on assignments were forged to be

insufficient under Rule 9(b)); *Lopez*, 2014 WL 7446746, at *8 (same); *see also Kreway v. Countrywide Bank, FSB*, 647 F. App'x 437, 438 (5th Cir. 2016) (unpublished).  In fact, in *Kreway*, the Fifth Circuit addressed a forgery argument almost identical to Bryant's, and it did not relax the pleading standard to the extent Bryant advocates.  The *Kreway* plaintiff alleged:

> "Upon information and belief, and/or information reasonably expected to be discovered during this litigation, the 2011 assignment purportedly signed by [MERS Assistant Secretary] Bud Kamyabi is also void because it was signed or affixed by a person not Bud Kamyabi, and signed or affixed by a person without any authority or knowledge whatsoever from the real Bud Kamyabi."

The plaintiff in *Kreway*, like Bryant, attached an exhibit to his pleading containing signature comparisons.  The Fifth Circuit found that the plaintiff "did not plead any facts relating to who perpetrated the alleged forgery or how, when, and where the alleged forgery was executed.  The allegation therefore [fell] short of the pleading requirements of Rule 9(b)."  647 F. App'x at 438.

All of Bryant's claims based on his forgery allegations necessarily fail because Bryant has not met the pleading standard for forgery.

## C.   First Cause of Action: Texas Civil Practices and Remedies Code § 12.002

Bryant contends that the defendants made, presented, or used the assignment and substitution of trustee documents with knowledge that they were fraudulent court records or a fraudulent lien or claim against real property or an interest in real property in violation of the Texas Civil Practices and Remedies Code section 12.002. Dkt. 20.  Defendants assert that this fraudulent lien claim fails as a matter of law because (1) it is time-barred; (2) a document assigning a deed of trust does not qualify as a "lien or claim" under the statute; and (3) Bryant fails to sufficiently plead that the defendants intended to cause injury.  Dkt. 22.  Bryant counters that several courts have held that an assignment of a deed of trust can constitute a lien or claim against an *interest* in property.  Dkt. 29.

And he argues that the statute of limitations argument is a red herring because he has properly pled the discovery rule. *Id.*

> To state a claim under Section 12.002(a), a plaintiff must plead facts showing the defendant
> "(1) made, presented, or used a document with knowledge that it was a 'fraudulent lien or claim against real or personal property or an interest in real or personal property,' (2) intended that the document be given legal effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish."

*Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 783 (5th Cir. 2015) (quoting *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 964 (Tex. App.—Dallas 2013, no pet.) (quoting Tex. Civ. Prac. and Rem. Code § 12.002(a))). The court chooses to address only the intent argument, which is dispositive. In pleading the third element, intent to cause injury, Bryant essentially recites the statute: "Defendants made, presented, or used a document or other record with intent to cause Plaintiff to suffer financial injury, mental anguish, or emotional distress." Dkt. 20. This is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Defendants' motion to dismiss the statutory claims under section 12.002, which is Bryant's first cause of action, is GRANTED. Bryant's claim for a violation of section 12.002 is DISMISSED WITH PREJUDICE.

**D.      Second and Third Causes of Action: Negligence Per Se, Gross Negligence, and Gross Negligence Per Se Claims**

Bryant contends that the defendants were "negligent per se in the misconduct alleged herein" and grossly negligent per se because they violated section 12.002, the section 192.007 of the Texas Local Government Code, and section 41.008(c)(8) and (c)(12) of the Texas Civil Practices and Remedies Code. Dkt. 20. Defendants argue that the statute of limitations bars these claims and,

regardless, Bryant does not sufficiently state a claim for violations of these statutes. Dkt. 22. In the court's original memorandum opinion and order, it granted Defendants' motion with regard to the negligence per se, gross negligence, and gross negligence per se claims pursuant to the statute of limitations. The court, however, overlooked the holding in *Vanderbilt Mortgage & Finance, Inc. v. Flores*, 692 F.3d 358 (5th Cir. 2012). Applying *Vanderbilt*, the court now concludes that, taking the claims plead in the complaint as true, it cannot dismiss the negligence-based claim due to the statute of limitations. Defendants' motion to dismiss on this ground is DENIED.

The court therefore turns to whether Bryant has otherwise stated plausible claims for negligence per se, gross negligence, and gross negligence per se. "Negligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person." *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). "Negligence *per se* is not a separate cause of action that exists independently of a common-law negligence cause of action. . . . Rather, negligence *per se* is merely one *method* of proving a breach of duty, a requisite element of any negligence cause of action." *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997) ("Negligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims."). "The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998).

Here, because Bryant did not state a claim for a violation of section 12.002, he has not stated a negligence per se or gross negligence per se claim associated with violating that statute.

With regard to section 192.007, Defendants assert that the statute does not require the recordation of an assignment of a deed of trust. Dkt. 22. The court agrees. Section 192.007 relates to "records of releases and other actions." It states:

> (a) To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.
> (b) An entry, including a marginal entry, may not be made on a previously made record or index to indicate the new action.

Tex. Loc. Gov't Code Ann. § 192.007. Bryant fails to state a claim for negligence per se or gross negligence per se with regard to Defendants' alleged violation of this statute because the statute does not require recordation of an assignment for the assignment to be valid. *See Dall. Cty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 494 (N.D. Tex. 2014) (agreeing with its sister court's *Erie* guess that section 192.007 "'does not require recordation of an assignment for that assignment to be effective as to the parties to an assignment'" (quoting *Green v. JPMorgan Chase Bank, N.A.*, 937 F. Supp. 2d 849, 858 (N.D. Tex. 2014)); *see also Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 227 n.27 (5th Cir. 2013) (discussing how section 192.007, an "obscure provision," "has never been cited in a state court decision and is best read as a procedural directive to county clerks, not as a prerequisite to the validity of assignments"). Moreover, Bryant has not shown that he is in the class of people this statute, which relates to how counties record certain instruments, was designed to protect. *Cf. Dall. Cty., Tex.*, 2 F. Supp. 3d at 949 ("Section 192.007 'was never intended to be wielded as a weapon in litigation'" (quoting the district court opinion in *Hudson v. JP Morgan Chase, N.A.*, 541 F. App'x 380, 384 (5th Cir. 2013)). Accordingly, Bryant fails to state a negligence per se or gross negligence per se claim for violation of this statute.

Bryant's claims under section 41.008 also fail. Texas Civil Practices and Remedies Code section 41.008 sets limits with regard to economic damages versus compensatory damages in certain types of cases. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.008. The subsections of this statute cited by Bryant in his negligence per se and gross negligence per se claims exclude the limitation of liability for knowing and intentional violations of certain Texas Penal Code sections, including a section prohibiting forgery (§ 32.21) and a section prohibiting fraudulent destruction, removal, or concealment in writing (§ 32.47).[3] *See id.* § 41.008(c)(8), 41.008(c)(12); Tex. Penal Code Ann. §§ 32.21, 32.47. Defendants argue that these claims fail as a matter of law because the Texas Penal Code does not create a private cause of action. Dkt. 22. Bryant correctly notes that a negligence per se claim cannot be defeated solely because a statute does not provide a private right of action, but he does not cite any authority, in his complaint or response, for the proposition that a violation of these sections of the Texas Penal Code constitutes negligence per se, and he does not provide any argument that he is in the class of individuals the statutes were intended to protect or that his injury is the type that the statutes were designed to prevent. *See* Dkts. 20 (amended complaint), 29 (response to motion to dismiss); *see also Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV0342, 2012 WL 4633177, at *14 (E.D. Tex. Oct. 2, 2012) (noting that the plaintiffs did not assert

---

[3] Texas Penal Code section 32.21(b) states: "A person commits an offense if he forges a writing with intent to defraud or harm another." Tex. Penal Code Ann. § 32.21(b). Subsection 32.21(d) makes it a state jail felony "if the writing purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument." *Id.* § 32.21(d).

Texas Penal Code section 32.47(a) states: "A person commits an offense if, with intent to defraud or harm another, he destroys, removes, conceals, alters, substitutes, or otherwise impairs the verity, legibility, or availability of a writing, other than a governmental record." Tex. Penal Code Ann. § 32.47(a). Subsection (d) makes the offense a state jail felony if the writing "is a deed, mortgage, deed of trust, security instrument, security agreement, or other writing for which the law provides public recording or filing, whether or not the writing has been acknowledged." *Id.* § 32.47(d).

a plausible negligence per se claim because "the pleading does not factually allege the violation of a specific statute, much less state how courts have determined that statute to establish negligence per se"); *cf., e.g.*, *Rabon v. Auto Fasteners, Inc.*, 672 F.2d 1231, 1238 (5th Cir. Unit B 1982) ("Although OSHA creates no private right of action, violation of an OSHA regulation is evidence of negligence, or, in appropriate circumstances, negligence per se.").

"[T]he mere fact that the Legislature adopts a criminal statute does not mean [the Texas Supreme Court] must accept it as a standard for civil liability." *Carter*, 584 S.W.2d at 278. While all "persons have a duty to obey the criminal law in the sense that they may be prosecuted for not doing so, . . . this is not equivalent to a duty in tort." *Perry*, 973 S.W.2d at 304. "[R]ecognizing a new, purely statutory duty 'can have an extreme effect on the common law of negligence' when it allows a cause of action where the common law would not." *Id.* at 306 (quoting Leonard, *The Application of Criminal Legislation to Negligence Cases: A Reexamination*, 23 Santa Clara L. Rev. 427, 449 n.92 (1983)). To determine whether such a duty should be created, Texas courts consider the following factors:

> (1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty; (2) whether the statute puts the public on notice by clearly defining the required conduct; (3) whether the statute would impose liability without fault; (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

*Id.* at 309.

"In the mortgage context, there is no special relationship between a mortgagor and a mortgagee, or between a servicer and a borrower, that would impose an independent common law

duty on [Defendants]." *Miller v. CitiMortgage, Inc.*, No. 3:11-CV-2786-L, 970 F. Supp. 2d 568, 585 (N.D. Tex. 2013) (collecting cases); *see also Levels v. Merlino*, 969 F. Supp. 2d 704, 717 (N.D. Tex. 2013) ("Many Texas courts have addressed whether the relationship between a mortgagor and a mortgagee constitutes a 'special relationship' and have consistently concluded that it does not." (collecting cases)). Thus, since there is no independent common-law duty, the first factor weighs against imposing a duty for violations of sections 32.21 and 32.47. With regard to the second and third factors, these statutes at least arguably clearly define the prohibited conduct, and both require intent to defraud or harm. Thus, the second and third factors at least arguably weigh in favor of imposing a duty. With regard to the fourth factor, it is unlikely that imposing a duty would cause ruinous damages disproportionate to the seriousness of the statutory violation in most circumstances; thus, this factor likely weighs in favor of imposing a duty. The fifth factor, however, weighs against imposing a duty. The direct cause of Bryant's harm – losing the real property at issue – is Bryant's admitted failure to make payments. Defendants did not cause Bryant to not make payments and there is no allegation that his failure to do so had anything to do with the alleged forgeries. The court finds that the first factor and fifth factor weigh sufficiently against imposing a duty to outweigh the middle factors, even if they the second, third, and fourth factors weigh in favor of a duty. Because the factors enunciated by the Texas Supreme Court weigh against imposing a duty, the court makes an *Erie* guess that the Texas Supreme Court would not find it appropriate to impose a negligence duty on its citizens for breach of these statutes. *See Seahawk Liquidating Tr. v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 991 (5th Cir. 2016) ("When an issue of state law is unclear, a federal court must make an '*Erie* guess' as to what the state's highest court would decide."); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938). Accordingly, the negligence per se and gross negligence per se claims must fail.

Bryant also attempts to assert a gross negligence claim outside of the context of negligence per se. This claim, however, fails because in order to assert a negligence claim, one must assert a duty. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) ("The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach."); *Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("[E]xcepting certain worker's compensation cases, it is well established that a finding of ordinary negligence is a prerequisite to a finding of gross negligence."). Bryant has not alleged such a duty and, as noted above, there is no "special relationship" here that would give rise to a duty. *See Miller*, 970 F. Supp. 2d at 585.

Defendants' motion to dismiss the negligence per se, gross negligence, and gross negligence per se claims is GRANTED. Bryant's negligence per se, gross negligence, and gross negligence per se claims are DISMISSED WITH PREJUDICE.

**E.      Fourth and Fifth Causes of Action: Equitable Tort Claims**

Bryant's claims of money had and received and unjust enrichment stem from his claim that the assignments were forged. *See* Dkt. 29 (arguing that the equitable and tort claims are properly pled because "the assignment of the deed of trust is void and do[es] not transfer the contractual rights from one Defendant to another"). Specifically, Bryant contends that Defendants were unjustly enriched by receiving mortgage payments from Bryant when they were not the legal owners of the mortgage lien, loan, note, or deed of trust. Dkt. 20. Bryant additionally argues that Defendants made mortgage assignments with knowledge that the documents or records were fraudulent court records or lines. *Id.* He contends that BONYM, BOA, and Ditech hold the monthly payments they received from Bryant as well as the Property when in equity and good conscience the money and Property belong to Bryant. *Id.*

Defendants argue that the unjust enrichment and money had and received claims fail because Bryant cannot recover under both tort and contract claims, and that the claims are based on the flawed assignment challenges, anyway, and therefore must be dismissed. Dkt. 22.

A money had and received claim is "'equitable in nature'" and "'belongs conceptually to the doctrine of unjust enrichment.'" *Fowler v. U.S. Bank Nat'l Ass'n*, 2 F. Supp. 3d 965, 983 (S.D. Tex. 2014) (Lake, J.) (quoting *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162 (Tex. 2007), and *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied)). To establish a claim for money had and received, Bryant must show that the "defendants hold money which in equity and good conscience belongs to him." *Id.* at 983.

Under Texas law, unjust enrichment "characterizes the result of failing to make restitution or benefits received under circumstances giving rise to an implied or quasi-contract." *TransAmerica Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied). The purpose for the claim is to prevent unconscionable loss to the payor and unjust enrichment to the payee. *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex. 1982). An unjust enrichment claim "is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) (applying Texas law); *see also Finkelstein*, 933 S.W.2d at 600.

Bryant does not sufficiently state a claim for either of these claims because he bases these claims on his allegations of forgery, which the court has ruled do not meet the pleading standard. Therefore, Defendants' motion to dismiss the money had and received and unjust enrichment claims, which are Bryant's third and fourth causes of action, is GRANTED. The money had and received and unjust enrichment claims are DISMISSED WITH PREJUDICE.

**F.      Sixth Cause of Action: Lack of Standing to Foreclose**

Bryant contends that BONYM did not have standing to conduct the foreclosure sale due to the allegedly forged assignment.  Dkt. 20.  Bryant also asserts that the assignment to BONYM is invalid and demonstrates a break in the chain of assignments of the Deed of Trust and Note because MERS failed to state for whom it was acting as nominee on the face of the Assignment.  *Id.* Defendants argue that the conclusory forgery allegations cannot support the lack of standing to foreclose claim and that the chain of title argument is invalid because MERS had the right to assign the Deed of Trust to BONYM.  Dkt. 29.

The court agrees with Defendants on both counts.  First, all claims stemming from the alleged forgery fail because Bryant has not adequately pled that the assignment was forged.  Second, Bryant's chain of title argument fails because MERS assigned only the Deed of Trust and had authority to do so as the beneficiary of the Deed of Trust.  *See Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 425 (5th Cir. 2014) ("Our Court has expressly recognized that MERS may assign a deed of trust to a third party and that such assignments confer the new assignee standing to non-judicially foreclose on property associated with that particular deed of trust." (citing *Martins v. BAC Home Loan Servicing, L.P.*, 722 F.3d 249, 253–55 (5th Cir. 2013)).  Accordingly, Defendants' motion to dismiss Bryant's sixth cause of action, lack of standing to foreclose, is GRANTED.  Bryant's lack of standing to foreclose claim is DISMISSED WITH PREJUDICE.

**G.      Seventh Cause of Action: Declaratory Judgment**

Bryant contends that BONYM and its agents do not have authority to foreclose because BONYM is not a real party in interest to the Note or Deed of Trust and requests judicial determination of the rights and obligations of the parties with regard to the Property.  Dkt. 20.  He requests, specifically, a determination whether any defendant has an ownership interest in the Note,

a decree declaring that he is entitled to the exclusive possession of the Property and that Defendants have no monetary interest in the Note, and a decree declaring that he owns a fee simple and is entitled to the quiet and peaceful possession of the Property. *Id.* Defendants argue that since the request for declaratory judgment is dependent on the underlying causes of action and because Bryant has not asserted any claims that are viable, the request for declaratory relief must also be denied. Dkt. 22. The court agrees. "The Declaratory Judgment Act is remedial only." *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). "A party's legal interest must relate to an actual 'claim arising under federal law that another asserts against him . . . .'" *Id.* (quoting *Loew v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984)); *see also Mbache v. Wilmington Trust, Nat'l Ass'n*, No. 4:15-CV-1846, 2016 WL 1162200, at *4 n.5 (S.D. Tex. Mar. 24, 2016) (Hoyt, J.) ("Claims for injunctive relief and declaratory relief are remedial in nature, and are therefore dependent on the plaintiff's assertion of a viable cause of action."). As Bryant has pled no viable causes of action, Defendants' motion to dismiss Bryant's seventh cause of action seeking declaratory relief is GRANTED. Bryant's request for declaratory relief is DENIED.

## H.     Eighth Cause of Action: Quiet Title

Bryant contends that "[u]nder the lien theory of mortgages, which is followed in Texas, the homeowner retains legal ownership of the mortgaged property while the trustee named in the deed of trust retains equitable ownership in favor of the original lender or their successors and assigns." Dkt. 20. Bryant argues that he has currently "lost legal ownership of the Property he had pursuant to that warranty deed he received from the previous owners" but that he has "an equitable interest in the Property . . . which he is enforcing *via* this lawsuit." *Id.* He argues that this equitable interest is superior to BONYM's legal title resulting from the foreclosure sale because BONYM "wrongly

claimed a secured monetary interest and estate in the Property that was adverse to Plaintiff's legal title at the time of sale." *Id.*

Defendants assert that the quiet title claim fails as a matter of law because it is not based on the strength of Bryant's title "but rather on the fatally flawed forgery allegations." Dkt. 22. Defendants argue that Bryant cannot demonstrate that he has superior title because any ownership interest he claims he had was "wiped away by the foreclosure of the Property, thereby giving BONYM superior title to the Property as a matter of law." *Id.* Defendants also argue that the quiet title claim fails because Bryant admitted he was in default in his amended complaint and the amended complaint does not state that Bryant tendered the amount owed on the Note. *Id.*

Bryant argues that Defendants "are wrong on the quiet title" and that the cases cited by Defendants "mangled Texas law on quiet title."[4] Dkt. 29. Bryant cites various cases in an attempt to explain to the court and Defendants "what Texas law really is." *Id.* Bryant also contends that he does not have to tender equity "at any moment during the litigation to set aside the sale" and that, instead, he must tender equity to regain title only if he is successful on the merits of setting aside a foreclosure sale. Dkt. 29.

### 1. Removing the Cloud

Bryant next points out that in a suit to quiet title, the equitable relief requested is to remove a cloud on the title.[5] Dkt. 29 (citing *MERS v. Groves*, No. 14-10-00090-CV, 2011 WL 1364070, at

---

[4] Bryant first explains "lien theory" by referring to a federal bankruptcy court opinion and a Tyler Court of Appeals decision. *See* Dkt. 29. The court will instead refer to an opinion by the Texas Supreme Court. In *Taylor v. Brennan*, 621 S.W.2d 592 (Tex. 1981), the Texas Supreme Court explained, "Texas follows the lien theory of mortgages. Under this theory the mortgagee is not the owner of the property and is not entitled to its possession, rentals or profits."

[5] Bryant also contends in his response that BONYM is not the *bona fide* purchaser of the Property and asserts in his response to the motion to dismiss that "[i]n the instant case, there has not been a foreclosure sale, yet." Dkt. 29. This is contrary to the complaint, which states that the

*5 (Tex. App.—Houston [14th Dist.] Apr. 12, 2011, pet. denied)).  Indeed, a "suit to quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property."  *Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property."  *Id.*  To establish that he "has a right of ownership and that the adverse claim is a cloud on the title that equity will remove," Bryant must show "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable."  *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied).

The court finds that Bryant has not sufficiently allegedly that BONYM "wrongly claimed a secured monetary interest and estate in the Property that was adverse to Plaintiff's legal title at the time of sale" (Dkt. 20).  This assertion depends on the forgery allegations, which are not adequately pled.  Bryant has thus not adequately pled that BONYM's claim was invalid or unenforceable, which is necessary to establish the third element.  Accordingly, Defendants' motion to dismiss the quiet title claim, which is Bryant's eighth cause of action, is GRANTED.  Bryant's quiet title claim is DISMISSED WITH PREJUDICE.

### 2.    Tendering Equity

Defendants assert that a purchaser at a foreclosure sale has superior title as a matter of law to the prior owner's because "the prior owner's chain of title is cut off by the trustee's deed that is executed in favor of the purchaser at the foreclosure sale."  Dkt. 22 (citing *Cook-Bell v. MERS*, 868

---

Property sold on April 5, 2016, and expressly indicates that it was a "foreclosure sale."  *See* Dkt. 20 at 4 ("Before the foreclosure sale, Plaintiff was the legal title-holder to the Property.").  Additionally, the substitute trustee's deed attached to the complaint indicates the Property was sold at a foreclosure sale in Fort Bend County on April 5, 2016.  Dkt. 20, Ex. 8.  It appears this argument was erroneously left in the response, and the court therefore does not address it.

F. Supp. 2d 585, 591 (N.D. Tex. 2012)).  Defendants argue that Bryant's interest in the title was "wiped away by the foreclosure" and mention that Bryant failed to allege he tendered the amount owed as an additional reason why the quiet title claim should fail.  *Id.*  Bryant contends that he does not have to tender equity "at any moment during the litigation to set aside the sale" and that, instead, he must tender equity to regain title only if he is successful on the merits of setting aside a foreclosure sale.  Dkt. 29.

Bryant's arguments about when he must tender equity are not on point.  He clearly did not pay the amount he owed before the foreclosure sale, so the foreclosure sale proceeded.  Bryant has alleged no facts to support the claim that his interest in the title is superior to BONYM's.

## I. Bryant's Ninth Cause of Action: Declaratory Relief Under the Statute of Limitations

Bryant contends that the limitations period began to run more than four years before the April 2016 foreclosure sale and that there were no actions taken by the parties or their agents during the limitations period that could be construed as a waiver or abandonment of acceleration.  Dkt. 20.  He therefore requests a judicial declaration of the rights and interests of the parties and a determination of the validity of the defendants' real property liens.  *Id.*  Defendants argue that Bryant "fails to allege when the Loan was accelerated and merely states in a conclusory fashion that no actions were taken to abandon the acceleration of the Loan."  Dkt. 22.  Defendants contend this does not raise a right to relief above a speculative level.  *Id.*  Bryant argues that he lays out the timing in paragraphs 11 and 12 of his amended complaint, which indicate that Defendants first began foreclosure activity in 2011 and did not complete the foreclosure sale until 2016.  Dkt. 29.

The court agrees with Bryant that he sets forth some timing information related to the foreclosure in his amended complaint.  He indicates that he received notices of sale in November 2011, November 2012, December 2012, August 2015, January 2016, and April 2016.  *See* Dkt. 20

¶ 11.  He attaches all of these notices to his complaint.  *See* Dkt. 20, Exs. 2–7.  He also states that the Property did was sold on April 5, 2016.  Dkt. 20 ¶ 12.  He does not, however, state when the note was accelerated.  The court thus agrees with Defendants that Bryant's request for a declaratory judgment on the limitations issue is conclusory and Bryant has not provided sufficient information to state a claim for relief beyond a speculative level.  Defendants' motion to dismiss this claim for declaratory relief under the statute of limitations, which is Bryant's ninth cause of action, is GRANTED.  Bryant's request for declaratory relief is DENIED.

## J.      Tenth Cause of Action: Fraud

Bryant's fraud claim also stems from his allegations that the deed of trust was forged.  *See* Dkt. 20. Defendants assert that the fraud claim is (1) barred by the economic loss rule; and (2) should be dismissed regardless because Bryant has not sufficiently pled the specific speaker, the misrepresentations, or when the misrepresentations were made, which are all necessary to establish a fraud claim.  Dkt. 22.  Bryant contends that he alleges "a continuing and systematic series of statements that Defendants owned the power of sale when in fact they did not." Dkt. 29.  He attaches documents that he alleges demonstrate six instances in which Defendants claimed to have the power of sale when they did not.  Dkt. 29 & Exs. 2–7.

If Bryant had pled the forgery claims with sufficient particularity, then these documents may have been sufficient evidence of who, what, when, where, and how to state a claim, but since the forgery claim fails, the fraud claim based on the defendants not having the power of sale due to the alleged forgeries also fails.  Defendants' motion to dismiss the fraud claim, which is Bryant's tenth cause of action, is GRANTED.  Bryant's fraud claim is DISMISSED WITH PREJUDICE.

**K.     Eleventh Cause of Action: Texas Debt Collection Act**

Bryant contends that BONYM, BOA, and Ditech are "debt collectors" who engaged in the collection of consumer debt with regard to Bryant's mortgage loan.  Dkt. 20.  Bryant alleges that BONYM, BOA, and Ditech violated the TDCA "by threatening foreclosure and engaging in foreclosure activity against [Bryant], attempting to collect the mortgage Note debt from [Bryant] without legal standing to do so, and when [BONYM] threatened to sell [Bryant's] home pursuant to a foreclosure order based on such wrongful charges."  Dkt. 20.  Bryant also alleges that the defendants' actions in processing the foreclosure, including filing the allegedly forged assignments and the attempts to collect past the limitations period constituted false, deceptive, or misleading practices.  *Id.*

Defendants argue that Bryant's TDCA claim fails because it is based on the fatally flawed forgery allegations.  Dkt. 22.  Defendants additionally assert that his allegations are conclusory, lack specific facts, and are thus insufficient to state a plausible claim.  *Id.*  Defendants further point out that foreclosure is not an action prevented by law and thus cannot constitute a violation of the TDCA, particularly since Bryant admits he defaulted on his loan.  *Id.*

Bryant alleges violations of Texas Finance Code sections 392.301(a)(8), 392.304(a)(14), and 392.304(a)(19). Under Texas Finance Code section 392.301(a)(8), a debt collector "may not use threats, coercion, or attempts to coerce that employ . . . threatening to take an action prohibited by law."  Tex. Fin. Code Ann. § 392.301(a)(8).  Under section 392.304(a)(14), a debt collector "may not use a fraudulent, deceptive, or misleading representation that employs . . . representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business."  Tex. Fin. Code Ann. § 392.304(a)(14).  Under section 392.304(a)(19), the catch-all provision, a debt collector "may not use a fraudulent, deceptive, or misleading representation that employs . . . using

any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."  Tex. Fin. Code Ann. § 392.304(a)(19).

The court agrees with the defendants that Bryant fails to state a claim for violations of these statutes because they are all based on the forgery allegations.  Defendants' motion to dismiss the TDCA claims is GRANTED.  All of Bryant's TDCA claims, which are asserted in his eleventh cause of action, are DISMISSED WITH PREJUDICE.

**L.     Requests for Attorneys' Fees and Exemplary Damages**

Since none of Bryant's claims survive the motion to dismiss, his requests for attorneys' fees and exemplary damages are also DENIED.

## IV. CONCLUSION

Defendants' motion to dismiss is GRANTED.  All of Bryant's claims against Ditech and BONYM are DISMISSED WITH PREJUDICE.  The claims against the remaining defendants remain pending.

Signed at Houston, Texas on April 11, 2018.

Gray H. Miller
United States District Judge